■ In the Matter of CLAUDE MOOREHEAD, Petitioner, v NEW YORK CITY TRANSIT AUTHORITY et al., Respondents.—Proceeding pursuant to CPLR article 78 to review a determination of the respondent New York City Transit Authority, dated April 18, 1990, which, after a hearing, *inter alia,* found that the petitioner had threatened to kill his commanding officer, and imposed the penalty of dismissal.

Adjudged that the petition is granted, on the law, without costs or disbursements, to the extent that the matter is remitted to the respondent New York City Transit Authority for computation of the amount of back pay owed to the petitioner in accordance herewith, and the determination is otherwise confirmed and the proceeding is otherwise dismissed on the merits.

On the afternoon of September 18, 1989, the petitioner Claude Moorehead, a New York City Transit Authority (hereinafter Transit Authority) Police Officer, met with his commanding officer in order to discuss a negative evaluation report. During the course of the discussion, the petitioner became angry and upset, and twice threatened to kill his commanding officer. The petitioner then reached for his service revolver, and had to be physically restrained and disarmed by several other officers. As a result of this incident, disciplinary charges were preferred against the petitioner pursuant to Civil Service Law § 75. The charges were sustained following an administrative hearing, and the petitioner's employment was terminated on April 18, 1990.

Contrary to the petitioner's contention, upon our review of the record we find that there was substantial evidence to support the respondents' determination *(see, Matter of Lahey v Kelly,* 71 NY2d 135; *Matter of Collins v Codd,* 38 NY2d 269). In this regard, we note that the uncontradicted evidence of two police witnesses established that the petitioner threatened to kill his commanding officer, and reached for his service revolver. Although some evidence was presented at the hear-

ing which indicated that the petitioner may have been suffering from depression at the time of the incident, there is no merit to the petitioner's contention that the respondents were precluded from imposing disciplinary sanctions against him pursuant to Civil Service Law § 75 unless his acts of misconduct were shown to be willful and intentional *(see, Matter of Brockman v Skidmore,* 39 NY2d 1045, *revg* 43 AD2d 572; *Matter of Muldoon v Mayor of Syracuse,* 34 NY2d 222; *Rao v Gunn,* 121 AD2d 618, *revd on other grounds* 73 NY2d 759). Moreover, in view of the serious nature of the petitioner's offense, and his prior disciplinary record, the penalty of dismissal was not so disproportionate to the offense as to be shocking to one's sense of fairness *(see, 300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176; *Matter of Pell v Board of Educ.,* 34 NY2d 222; *Matter of Casey v New York City Tr. Auth.,* 175 AD2d 128; *Matter of Hughes v Ward,* 158 AD2d 362).

However, the matter must be remitted to the Transit Authority based upon our determination that Civil Service Law § 75 (3), which permits an employee to be suspended without pay for no more than 30 days, requires that the petitioner be paid by the Transit Authority for the entire period of his suspension, less 30 days and less any periods of delay attributable to him *(see, Matter of McCoy v Gunn,* 153 AD2d 863; *Matter of Briggs v Scoralick,* 147 AD2d 694; *Gellman v Gunn,* 143 AD2d 628). Any award of back pay shall be reduced by any unemployment benefits he received during the period for which back pay is awarded (Civil Service Law § 75 [3]). Eiber, J. P., O'Brien, Ritter and Copertino, JJ., concur.